**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 19-cr-00066-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. THOMAS WOHLMAN,

    Defendant.

---

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

---

The United States of America, by undersigned counsel, respectfully submits this response in opposition to Defendant Thomas Wohlman's Motion for Early Termination of Supervised Release (Doc. 8). For the reasons set forth below, the Government agrees with the U.S. Probation Office and submits that Defendant's motion should be denied.

**RESPONSE**

The Defendant's motion for early termination of supervised release should be denied for at least three reasons. First, contrary to the image of compliance that he portrayed in his motion, supervision is not going well. The Government understands that today the Probation Officer will file a response that details their concerns about Defendant's conduct during his short stint under supervision so far. The Government is also aware that on August 19, 2020, the Lakewood Police Department opened an investigation of Defendant for making threats against the U.S. Probation Officer to staff at his assigned sex offender therapy provider. (Gov. Ex. 1, 2, 3.) Below are

some of the statements allegedly made by Defendant about the Probation Officer:

- "I'm going to show him what's in my box."

- "I'll put him in a chokehold and slam him onto the fucking floor."

- "He's just a piece of shit. He's a fucking liar."

- "That's a weak ass motherfucker who has someone with him always." (Referring to him having someone else present during their probation meetings)

- "If I can't be happy, I'm going to be mad. The problem is it's becoming more than mad. I can't find a path or road through this. I don't care about going to prison. I don't give a fuck about hurting anyone. I don't give a fuck about seeing anyone."

- "I'm not going to Independence House because how they treated me after prison. They were prejudice against me. They put my shit out there. They had a bunch of Mexican bitches there and all they do is give out people's info…(said more things that I couldn't type fast enough to get). I'd rather go to prison." (when discussing going to mental health and the thought of only being able to do it through Independence House)."

- "I promise you this time. If you don't do what you say, I'll tear this house fucking down." (Regarding feeling lack of transparency with his previous therapist) later on, he said, "It's nothing against you guys. But I don't want to be here more than I need to."

- "You had to do all this fighting to survive. You have to have that attitude that you do everything they tell you to try and find some happiness in your life. But instead I get some dirty fucking prick. Since he didn't get the answers, he sent me to you."

- "The only time I was scared was on Monday when I wanted to hurt that PO. I was scared that I would only get one or two punches on him instead of 10 or 15. That's not how I want to be. But there's still people who want to drive me to that. I can't get out of this fake ass system."

(Gov. Ex. 2.) Separately, at his prior therapy provider, another client reported that Defendant talked about "booby traps" and said "if they come to me I know how to prepare" in reference to the alleged "booby traps" and his Probation Officer. (Gov. Ex. 4.) These threats of violence against the Probation Officer, which are alleged by two distinct therapy providers, suggest that a compliance review hearing to assess whether or not Defendant violated the terms of supervised release is more in order than early termination of supervised release.

Second, Defendant has completed only 18% of the 120 month term of supervised release ordered by Chief U.S. District Judge Linda R. Reade at his sentencing hearing. He barely has finished 1/3 of the 60-month statutory mandatory minimum term of supervised release that is required for sex offenders under 18 U.S.C. § 3583(k). Defendant has neither completed the core modules of sex offender treatment, which can take 3 years or more to complete, nor has he started treatment aftercare that often continues for several years to promote community safety. Indeed, Defendant recently started with the new therapy provider following his first therapy provider's recommendation that he receive <u>more</u> therapy to address not only his recidivism risk but also for mental health and anger management issues. (Gov. Ex. 4.) This simply is not the profile of a Defendant who should receive early termination from supervised release. This is the profile of a sex offender who is still starting his ten-year period of supervision and who has a lot of work ahead to complete treatment, which Chief Judge Reade presumably ordered him to

complete in order to help him avoid recidivism and other dangerousness concerns.

Third, Chief Judge Reade correctly found Defendant to be a repeat and dangerous sex offender who was eligible for a lifetime term of supervised release. (Doc. 3 ¶ 43.) Less than 10 years of supervision would be inappropriate under the sentencing factors in 18 U.S.C. § 3553(a).

Specifically, Defendant was convicted in the underlying case for attempted coercion and enticement of one 15-year old girl, "Abby," but other conduct relevant for sentencing included his attempted coercion and enticement of a second 15-year old girl, "Monica." (Doc. 3 ¶¶ 13-17, 38-41.) Defendant was 37 to 39 years old at that time. (*Id.* pg. 2.) In chats with the undercover agent called "Abby," the Defendant was dishonest about his age (claiming he was 26 years old), he sent pornographic pictures of an erect penis and people having sex to the child, and he solicited the child to engage in sex for money through chats including the following:

- tom68iowa: would you like to have sex?
- abby15girl2002: i m curious about i
- abby15girl2002: it
- tom68iowa: would you have sex with a older man
- abby15girl2002: how old
- tom68iowa: 26 my age
- abby15girl2002: maybe
- tom68iowa: would you want me to spoil you ?
- abby15girl2002: with clothes?
- tom68iowa: what ever you want
- abby15girl2002: want to what?

- tom68iowa: clothes money..
- tom68iowa: would you like that
- abby15girl2002: ya
- tom68iowa: would you let me take your virginity
- abby15girl2002: u want to
- tom68iowa: yes

(*Id.* ¶¶ 13-17.)

Similarly, in chats with the undercover agent called "Monica," Defendant told the child that he wanted her to perform oral sex on him. (*Id.* ¶¶ 38-41.) The defendant agreed to meet "Monica" twice. (*Id.*) He did not show up the first time but was arrested after attempting to meet the child at Walmart for the second planned encounter. (*Id.*)

Defendant's computer was then searched and officers discovered 176 images of suspected child pornography. (*Id.*) Some of those images depicted prepubescent minors engaged in oral sex and vaginal intercourse with adult males. (*Id.*)

Chief Judge Reade concluded that this conduct merited a sentence at the <u>top</u> of Guideline range for incarceration and <u>double</u> the mandatory minimum period of supervised release. The Government submits that the basis for her assessment of the 3553(a) factors has not changed. The nature and circumstances of the offense are just as egregious in 2020 as they were when Defendant was sentenced in 2010. If anything, Defendant's alleged threats against the Probation Officer is more cause for concern when determining the sentence needed to afford adequate deterrence to criminal conduct and protect the public from future crimes by Defendant. But even setting aside the threat allegations, completing only 18 % of a sentence is insufficient to declare

victory and conclude that Defendant no longer poses the risk that Chief Judge Reade saw during the sentencing proceeding when she ordered him to serve 10 years under supervision.

Defendant is statutorily eligible for termination of supervised release under 18 U.S.C. § 3583(e)(1) because he has completed one year or more of supervised release.  However, for all of these reasons, the 18 U.S.C. § 3553(a) factors strongly militate in favor of keeping him under supervision for many more years as originally ordered by Chief Judge Reade.  Defendant should remain under supervision so that he can be compliant and show respect to the Court and its designee in the U.S. Probation Officer, and so that he can be supported by the Probation Officer in completing, among other things, sex offender treatment and other important therapy. Accordingly, the Court should deny Defendant's Motion for Early Termination.

    Respectfully submitted,

    JASON R. DUNN
    United States Attorney

    By:  *s/ David A. Tonini*
    David A. Tonini
    Assistant United States Attorney
    United States Attorney's Office
    1801 California Street, Suite 1600
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    Fax: (303) 454-0403
    E-mail: David.Tonini@usdoj.gov

    Attorneys for the Government

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

      I hereby certify that on this 14th day of October, 2020, I electronically filed the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

**Defense Attorney:**
Hillary C. Aizenman

**Email Address:**
hillary@polanskylawfirm.com

    *s/ David Tonini*
    By: David Tonini
    Assistant U.S. Attorney